# United States District Court

NORTHERN DISTRICT OF GEORGIA

**ORIGINAL**

UNITED STATES OF AMERICA
v.

GREGORY LEE HARVEY

**CRIMINAL COMPLAINT**

CASE NUMBER: 1:13-MJ-171

FILED IN CHAMBERS

FEB 11 2013

U.S. MAGISTRATE JUDGE
N.D. GEORGIA

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning in or about November 2012 and continuing through January 2013, in DeKalb County and elsewhere in the Northern District of Georgia, the defendant did,

attempt to possess with intent to distribute cocaine, a Schedule II controlled substance, and possess a firearm in furtherance of a drug trafficking crime

in violation of Title 21, United States Code, Section 841 and Title 18, United States Code, Section 924(c).

I further state that I am a agent of the Federal Bureau of Investigation (FBI) and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof.      (X) Yes ( ) No

Signature of Complainant
James P. Hosty, IV

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it.  Sworn to before me, and subscribed in my presence

February 11, 2013                                at    Atlanta, Georgia
Date                                                   City and State

Alan J. Baverman
United States Magistrate Judge
Name and Title of Judicial Officer            Signature of Judicial Officer
AUSA Brent A. Gray

## AFFIDAVIT IN SUPPORT OF ARREST WARRANT
## FOR GREGORY LEE HARVEY

I, James P. Hosty, IV, being duly sworn, depose and state the following:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed for approximately 7 years. I am currently assigned to the Atlanta, Georgia office and work on the Civil Rights/Human Trafficking/Public Corruption Squad, which has the responsibility for investigating police corruption, among other federal crimes. I am a law enforcement officer of the United States, FBI, U.S. Department of Justice, within the meaning of Title 18, United States Code, Section 3052, which includes being an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses pursuant to Title 18, United States Code, Section 3052.

2. During my law enforcement career, I have participated in dozens of investigations relating to drug trafficking and police corruption. I have received specialized training in the methods and techniques used by drug trafficking organizations. I have debriefed many witnesses and confidential informants about drug trafficking generally, as well as the specific practice of employing corrupt law enforcement officers as part of a drug trafficking scheme. Through this training and experience, I have become familiar with many of the patterns of activity exhibited by drug traffickers. Except where I state that I am relying on my training and experience as described here, the information in this affidavit is based on information and belief, the source of that information and basis for that belief being my own investigation and information obtained by other law enforcement agents.

3. I submit this affidavit in support of a warrant for the arrest of GREGORY LEE HARVEY for attempted possession with the intent to distribute cocaine in violation of Title 21,

United States Code, Section 841, and possession of a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).

## BACKGROUND OF INVESTIGATION

4. Based on my training and experience, I know that sophisticated drug trafficking groups distribute narcotics using a variety of covert methods that are designed to avoid detection by law enforcement and others. If detected, they are aware law enforcement will seize the drugs and money and arrest them. They also know that other drug dealers or criminal groups will rob them, if given a chance, stealing both the drugs and money. In the worst case, drug deals can turn violent.

5. Given these risks, drug traffickers occasionally attempt to enlist law enforcement officers to provide protection both for them and the drug transactions they conduct. In employing corrupt police officers at a drug deal, the traffickers hope to prevent rival groups from intervening and ultimately stealing their drugs and the drug proceeds. Additionally, they hope to keep legitimate law enforcement at bay by positioning a visible law enforcement presence at or near the drug transactions. In these cases, drug traffickers are willing to pay thousands of dollars to corrupt law enforcement officers who will provide protection for these transactions.

6. In August, 2011, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) was investigating a street gang in the Metro Atlanta area. During the course of that investigation, a confidential informant (CI-1) provided information about the gang's criminal activities. CI-1 told federal agents that police officers were involved in protecting the gang's activities, including their drug trafficking crimes. In general, these police officers, in uniform, driving police vehicles or otherwise displaying indicia of their positions, protected the drug dealers from being detected or arrested by other law enforcement officers and from being robbed by other drug dealers. The

information provided to federal agents by CI-1 regarding the use of law enforcement officers to protect drug deals is consistent with my experience and training in the investigation of similar cases.

7. CI-1, who had been working with federal agents since August, 2011, communicated to gang members and their associates that CI-1 would need police protection for his/her upcoming drug transactions. Shortly thereafter, Shannon Bass, Jerry B. Mannery, Jr., and Elizabeth Coss, none of whom are law enforcement officers, began identifying to CI-1 law enforcement officers interested in protecting his/her drug deals. Once those individuals were identified, information regarding the location and circumstances of the proposed drug deals was relayed to CI-1 and/or Shannon Bass, Jerry B. Mannery, Jr., Elizabeth Coss for him/her to pass along to law enforcement officers who expressed an interest in protecting the drug transactions.

## FACTS ESTABLISHING PROBABLE CAUSE

8. On six separate occasions, beginning in or about November, 2012 and continuing through January, 2013, GREGORY LEE HARVEY provided protection for what he believed to be drug transactions involving multiple kilograms of cocaine.

9. <u>Meeting on November 19, 2012.</u> On November 19, 2012, Shannon Bass met with GREGORY LEE HARVEY at an IHOP restaurant, 5170 Memorial Drive, Stone Mountain, Georgia. During the meeting, Bass told GREGORY LEE HARVEY that Bass helps a drug cartel deliver cocaine and that Bass and the cartel would like to use police officers to protect their drug deals. GREGORY LEE HARVEY, falsely representing that he was a detention officer with the DeKalb County Sheriff's Office (DCSO), agreed to provide protection for the drug deals in exchange for money. This meeting was audio recorded.

10. <u>Drug Transaction on December 3, 2012.</u> On December 3, 2012, FBI agents surveilled a meeting between GREGORY LEE HARVEY and Bass at the aforementioned IHOP

restaurant parking lot. During this meeting, GREGORY LEE HARVEY got into Bass's vehicle and they drove to a warehouse in Chamblee, Georgia. Once there, Bass told GREGORY LEE HARVEY that Bass was going into the warehouse to retrieve a quantity of cocaine that was to be delivered on behalf of the cartel. Bass told GREGORY LEE HARVEY to stand watch while Bass was in the warehouse. FBI agents then observed GREGORY LEE HARVEY standing outside the warehouse wearing a shirt with the word "SHERIFF" printed across the back and a firearm in a holster on his belt. When Bass returned to his vehicle with a bag, both GREGORY LEE HARVEY and Bass got into Bass's vehicle. Bass handed GREGORY LEE HARVEY the bag which contained three kilograms of counterfeit cocaine. Bass told GREGORY LEE HARVEY that the bag should contain "three." GREGORY LEE HARVEY opened the bag and responded, "yes." Bass and GREGORY LEE HARVEY drove back to the IHOP restaurant where Bass gave GREGORY LEE HARVEY a payment of $2,000. GREGORY LEE HARVEY then counted the money while still in the vehicle. This transaction was audio recorded.

11.  Drug Transaction on December 17, 2012. On December 17, 2012, FBI agents surveilled a meeting between GREGORY LEE HARVEY and Bass at the aforementioned IHOP restaurant parking lot. During this meeting, GREGORY LEE HARVEY got into Bass's vehicle and they drove to a warehouse in Chamblee, Georgia. Once there, Bass told GREGORY LEE HARVEY that Bass was going into the warehouse to retrieve a quantity of cocaine that was to be delivered on behalf of the cartel. Bass told GREGORY LEE HARVEY to stand watch while Bass was in the warehouse. FBI agents then observed GREGORY LEE HARVEY standing outside the warehouse wearing a shirt with the word "SHERIFF" written in large font across the back and a firearm in a holster on his belt. When Bass returned to his vehicle with a bag, both GREGORY LEE HARVEY and Bass got into Bass's vehicle. Bass handed GREGORY LEE HARVEY the bag which contained

three kilograms of counterfeit cocaine. Bass then asked GREGORY LEE HARVEY to count the number of kilograms of cocaine in the bag. GREGORY LEE HARVEY did so and told Bass that there were three inside. Bass and GREGORY LEE HARVEY drove back to the IHOP restaurant where Bass asked GREGORY LEE HARVEY to put the cocaine in the trunk of Bass's vehicle. GREGORY LEE HARVEY did so and then received a payment of $2,000 from Bass. This transaction was audio and video recorded.

12. <u>Conversations Between December 18, 2012 and January 1, 2013.</u> On or between December 18, 2012 and January 1, 2013, Bass and GREGORY LEE HARVEY engaged in a number of conversations during which GREGORY LEE HARVEY told Bass that he knew of more police officers who would be interested in assisting in the protection of illegal drug transactions.

13. <u>Meeting on January 2, 2013.</u> On January 2, 2013, FBI agents surveilled a meeting between GREGORY LEE HARVEY, Bass and Monyette McLaurin at Marlowe's Tavern, 4156 Lavista Road, Tucker, Georgia. During this meeting, McLaurin falsely represented that he was a deputy with the DCSO. McLaurin agreed to assist GREGORY LEE HARVEY in protecting Bass's future cocaine transactions in exchange for payment. Additionally, GREGORY LEE HARVEY and McLaurin discussed an individual who they believed may be aware of GREGORY LEE HARVEY's recent criminal activity. GREGORY LEE HARVEY and McLaurin discussed killing that individual if the individual reported their activity.

14. <u>Drug Transaction on January 3, 2013.</u> On January 3, 2013, FBI agents surveilled a meeting between GREGORY LEE HARVEY, Bass and McLaurin in a parking lot located at 4606 Memorial Drive, Decatur, Georgia. During this meeting, Bass directed GREGORY LEE HARVEY to a parking lot of a Target Store to watch the parking lot to make sure it was a safe place to conduct a drug transaction and that there was no law enforcement present. McLaurin and Bass then got into

Bass's vehicle and Bass drove to a warehouse in Chamblee, Georgia. During their drive to the warehouse, McLaurin discussed the need for the two to agree on a signal that Bass could give McLaurin in case Bass felt endangered during the transaction. McLaurin volunteered that if given a signal, he would be willing to shoot the buyer if necessary. Simultaneously, GREGORY LEE HARVEY drove his personal vehicle to a Target Store, 4241 Lavista Road, Tucker, Georgia. Once at the warehouse, Bass told McLaurin that Bass was going into the warehouse to retrieve a quantity of cocaine that was to be sold in the drug transaction in the Target Store parking lot. Bass told McLaurin to stand watch while Bass was inside the warehouse. FBI agents then observed McLaurin standing outside the warehouse wearing a DCSO uniform and a firearm in a holster on his belt. When Bass returned to his vehicle with a bag, both McLaurin and Bass got into Bass's vehicle. Bass handed McLaurin the bag. Bass then asked McLaurin to count the number of kilograms of cocaine in the bag. McLaurin did so and told Bass that there were three inside. Bass and McLaurin drove to the aforementioned Target Store where GREGORY LEE HARVEY was waiting. Within minutes, CI-6 arrived and parked his/her vehicle near Bass's vehicle. Bass then got into CI-6's vehicle and Bass gave CI-6 the bag containing three kilograms of counterfeit cocaine. Then, CI-6 gave Bass a back pack containing $6,000. During this transaction, FBI agents observed GREGORY LEE HARVEY parked near the drug transaction and McLaurin standing just outside Bass's vehicle, watching the transaction. Once this transaction was complete, Bass returned to his vehicle and McLaurin got into GREGORY LEE HARVEY'S vehicle. Bass, McLaurin, and GREGORY LEE HARVEY left the Target Store parking lot and drove immediately to a parking lot located at 4606 Memorial Drive, Decatur, Georgia. There, Bass handed GREGORY LEE HARVEY the payment of $6,000 which was to be shared with McLaurin. This transaction was audio and video recorded.

6

15.     Drug Transaction on January 10, 2013. On January 10, 2013, FBI agents surveilled a meeting between GREGORY LEE HARVEY, Bass and McLaurin in a parking lot located at Mr. Cue's Billiards, 3541 Chamblee Tucker Road, Atlanta, Georgia. During this meeting, Bass directed GREGORY LEE HARVEY to a parking lot of a Publix Store to watch the parking lot to make sure it was a safe place to conduct a drug transaction and that there was no law enforcement present. Then, McLaurin and Bass got into Bass's vehicle and Bass drove to a warehouse in Chamblee, Georgia. Simultaneously, GREGORY LEE HARVEY drove his personal vehicle to the Publix Store, 2162 Henderson Mill Road, Atlanta, Georgia. Once at the warehouse, Bass told McLaurin that Bass was going into the warehouse to retrieve a quantity of cocaine that was to be sold in the drug transaction in the Publix Store parking lot. Bass told McLaurin to stand watch while Bass was inside the warehouse. FBI agents then observed McLaurin standing outside the warehouse wearing a DCSO uniform and a firearm in a holster on his belt. When Bass returned to his vehicle with a bag, both McLaurin and Bass got into Bass's vehicle. Bass handed McLaurin the bag which contained three kilograms of counterfeit cocaine. Bass then asked McLaurin to count the number of kilograms of cocaine in the bag. McLaurin did so and told Bass that there were three inside. Bass and McLaurin drove to the aforementioned Publix Store, where GREGORY LEE HARVEY was waiting. Within minutes, CI-6 arrived and parked his/her vehicle near Bass's vehicle. Bass then got into CI-6's vehicle and Bass gave CI-6 the bag containing three kilograms of counterfeit cocaine. Then, CI-6 gave Bass a back pack containing $6,000. During this transaction, FBI agents observed GREGORY LEE HARVEY parked near the drug transaction and McLaurin standing just outside Bass's vehicle, watching the transaction. Once this transaction was complete, Bass returned to his vehicle and McLaurin got into GREGORY LEE HARVEY'S vehicle. Bass, McLaurin, and GREGORY LEE HARVEY left the Publix Store parking lot and drove immediately to the parking

lot of Mr. Cues Billiards, 3541 Chamblee Tucker Road, Atlanta, Georgia. There, Bass handed GREGORY LEE HARVEY the payment of $6,000 which was to be shared with McLaurin. This transaction was audio and video recorded.

16.  <u>Meeting on January 15, 2013.</u>  On January 15, 2013, FBI agents surveilled a meeting between GREGORY LEE HARVEY, Bass, McLaurin and Chase Valentine at the Applebee's Restaurant, 4353 Lawrenceville Highway, Tucker, Georgia. During this meeting, Valentine falsely stated he was a deputy with the DCSO. Valentine agreed to assist GREGORY LEE HARVEY and Bass in protecting Bass's future cocaine transactions in exchange for payment.

17.  <u>Drug Transaction on January 17, 2013.</u>  On January 17, 2013, FBI agents surveilled a meeting between GREGORY LEE HARVEY, Bass and Valentine in a parking lot located at Mr. Cues Billiards, 3541 Chamblee Tucker Road, Atlanta, Georgia. During this meeting, Bass directed GREGORY LEE HARVEY to a parking lot of a Kroger Store to watch the parking lot to make sure it was a safe place to conduct a drug transaction and that there was no law enforcement present. Valentine and Bass then got into Bass's vehicle and they drove to a Quick Trip, 4086 Pleasantdale Road, Doraville, Georgia. Simultaneously, GREGORY LEE HARVEY drove his personal vehicle to the Kroger Store, 4357 Lawrenceville Highway, Tucker, Georgia. Once at the Quick Trip, Bass told Valentine that Bass was going into a parked Chevrolet Suburban to retrieve a quantity of cocaine that was to be sold in the drug transaction in the Kroger Store parking lot. Bass told Valentine to stand watch while he was inside the Suburban. FBI agents then observed Valentine standing outside Bass's vehicle wearing a DCSO uniform and a firearm in a holster on his belt. When Bass returned to his vehicle with a bag, both Valentine and Bass got into Bass's vehicle. Bass handed Valentine the bag which contained three kilograms of counterfeit cocaine. Bass then asked Valenine to count the number of kilograms of cocaine in the bag. Valentine did so and told Bass

that there were three inside. Bass and Valenine drove to the aforementioned Kroger Store where GREGORY LEE HARVEY was waiting. Within minutes, CI-6 arrived and parked his/her vehicle near Bass's vehicle. Bass then got into CI-6's vehicle and Bass gave CI-6 the bag containing three kilograms of counterfeit cocaine. Then, CI-6 gave Bass a back pack containing $6,000. During this transaction, FBI agents observed GREGORY LEE HARVEY parked near the drug transaction and Valentine standing just outside Bass's vehicle, watching the transaction. Once this transaction was complete, Bass returned to his vehicle and Valentine got into GREGORY LEE HARVEY'S vehicle. Bass, Valentine, and GREGORY LEE HARVEY left the Kroger Store parking lot and drove immediately to the parking lot of Mr. Cue's Billiards, 3541 Chamblee Tucker Road, Atlanta, Georgia. There, Bass handed GREGORY LEE HARVEY the payment of $6,000 which was to be shared with Valentine. This transaction was audio and video recorded.

18.    In communications leading up to and through the above-described drug transactions, the drug involved was described to GREGORY LEE HARVEY as cocaine.

## CONCLUSION

19.    Based on the foregoing, I submit there is probable cause to believe that GREGORY LEE HARVEY attempted to possess with the intent to distribute cocaine in violation of Title 21, United Stated Code Section 841, and possessed a firearm in furtherance of a drug trafficking crime in violation of Title 18, United States Code, Section 924(c).